UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PAUL MORIN,

        Plaintiff,

     v.                               Case No. C-1-02-143

SHAWN GREGORY, et al.,

        Defendants.

**ORDER**

This matter is before the Court on motions for summary judgment filed by defendants David Ison (doc. 32) and Shawn Gregory (doc. 36). The parties have filed proposed findings of fact and conclusions of law (docs. 41, 42).

**I. Procedural history**

Plaintiff brings this action seeking damages to redress alleged violations of his rights under the Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff alleges that while he was incarcerated at the Hamilton County Justice Center, he was attacked and beaten by his cell mate. Plaintiff asserts that he suffered massive head injuries and a broken jaw. Plaintiff alleges that although inmates advised or attempted to advise the control

room officers Gregory and Ison via the intercom phones that there was a disturbance and subsequently that plaintiff had been beaten, the officers did not respond. Plaintiff claims that he lay unconscious in his cell during the night following the beating and was not discovered until the following morning, over seven hours after the beating had occurred.

Plaintiff brings two causes of action based on the incident: (1) defendants violated plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution by not providing adequate security to plaintiff after being specifically notified that plaintiff was in jeopardy of serious physical harm, and (2) defendants violated plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution through their deliberate indifference to plaintiff's serious medical needs by not responding to inmates' pleas for help after plaintiff had been beaten, thereby causing a delay of over seven hours before plaintiff received medical attention. Plaintiff seeks compensatory and punitive damages.

Defendants have each filed a motion for summary judgment. Defendant Gregory argues that plaintiff cannot establish the deliberate evidence standard necessary to bring an Eighth Amendment claim because he has failed to present evidence showing that Gregory had any knowledge that plaintiff was at excessive risk of being assaulted in his cell, that Gregory was aware of the assault at the time it occurred, or that plaintiff suffered injury from Gregory's actions or inactions as opposed to injury from plaintiff's cell mate. Gregory further argues that even if plaintiff had established an Eighth Amendment violation, Gregory is entitled to qualified immunity because his decisions based on the facts before him at the time were objectively reasonable.

Defendant Ison argues that plaintiff cannot establish an Eighth Amendment claim because plaintiff has not shown that Ison knew of facts which demonstrated the presence of a risk of serious harm, or that Ison concluded that there actually was an excessive risk to the health or safety of plaintiff and disregarded that risk. Ison further argues that he is entitled to judgment as a matter of law on plaintiff's claim under the Eighth Amendment for deliberate indifference to his medical needs because there is no evidence that Ison was aware of facts from which an inference could be drawn that plaintiff had serious medical needs and no evidence that Ison subjectively concluded that plaintiff had serious medical needs and disregarded those needs. Ison further argues that even if plaintiff could establish an Eighth Amendment violation, he is entitled to qualified immunity because there is no evidence that Ison violated clearly established law of which a reasonable official in his position would have known.

Plaintiff opposes defendants' motions for summary judgment. Plaintiff argues that there is direct evidence that Gregory had knowledge of the assault on him both before and during the assault. Plaintiff contends that it was communicated to Gregory that one inmate was going to attack another inmate in the immediate present and that Gregory understood the words communicated to him to be a threat of violence. Plaintiff claims that Gregory's affidavit statement that at no time did he ever infer from the facts before him during the shift on which the assault occurred that plaintiff was in substantial risk of serious harm is not worthy of belief. Plaintiff relies on Hamilton County Interdepartmental Correspondence from Lt. Warren Tudor to Sheriff Simon Leis as evidence that Gregory informed Ison that he had received a call from

plaintiff's cell stating, "I am going to beat his ass" and that he then received an irate call from Cell 23, the adjoining cell. Plaintiff contends that Ison's contrary testimony at his deposition, i.e., that two calls came in and Gregory stated he could not understand what was said, is not credible given Gregory's own statement that he clearly heard the statement, "I'm going to beat his ass." Plaintiff also notes that Ison himself answered a call from Cell 25, and he testified that he hung up when he received no response from the caller, made no attempt to call back, and made no attempt to turn on the intercom and listen to what was going on in the cell. Plaintiff further argues that Ison was deliberately indifferent in failing to go into plaintiff's cell to closely examine him after having had a report of an in-cell assault. Plaintiff notes that the Hamilton County Sheriff found that both Ison and Gregory had violated the Sheriff's regulation requiring law enforcement personnel to take action in any criminal or emergency situation coming to their attention.

In reply, defendants argue that the Interdepartmental Correspondence on which plaintiff relies is not admissible into evidence because it contains hearsay upon hearsay and that the finding of negligence contained therein is not sufficient to establish deliberate indifference under the Eighth Amendment. Defendant Ison contends that in any event, the matters set forth in the report fail to establish proof of Ison's subjective knowledge. Ison contends that there is no evidence that Ison knew that a caller had stated, "I am going to beat his ass"; rather, the only evidence is that Ison's subjective state of mind as to whatever was going on in Cells 23 and 25 was not a serious problem but typical interplay between cells. Ison argues that even if the Court were to consider the Interdepartmental Correspondence, it does not establish proof

of his subjective knowledge

Defendant Gregory states that there is no evidence to refute his subjective belief that there was an argument between inmates in two different cells rather than in the same cell and no evidence to refute that after the alleged assault, Gregory had no knowledge that plaintiff was in need of medical attention. Gregory argues that even if the Interdepartmental Correspondence is admissible, it is still consistent with his testimony.

## II. Undisputed facts

The following facts are undisputed:

1.   Defendants Shawn Gregory and David Ison were employed by the Hamilton County Sheriff's Office as Corrections Officers at the Hamilton County Justice Center at all relevant times.

2.   In September 2000, plaintiff was arrested and jailed in the Hamilton County Justice Center on a charge of disorderly conduct.

3.   By September 27, 2000, plaintiff had been in jail on the disorderly conduct charge for approximately two weeks. During that entire period of time, plaintiff's cell mate was Shereef Naeem Assamad.

4. During the two weeks prior to September 27, 2000, plaintiff had become concerned about what he described as Assamad's anti-social behavior. Assamad would return to the cell from the TV viewing area every evening at around 11:00 p.m., slam the cell door, and wake plaintiff from his sleep. Assamad would then engage in what plaintiff described as "kung fu like" motions in the cell which disturbed plaintiff. Plaintiff would return to sleep but eventually Assamad would wake him up again, objecting to plaintiff's snoring.

5. Plaintiff made written requests to be transferred from the fifth floor to the third floor, or at least out of the cell with Assamad. Those transfer requests were not made to either of the defendants and were denied.

6. Assamad had never previously punched plaintiff nor physically assaulted him in any way prior to the incident giving rise to plaintiff's injuries on September 27, 2000.

7. Plaintiff was never assaulted or threatened on any other occasion while he was in jail.

8. On the evening of September 27, 2000, defendants Gregory and Ison were assigned to third shift at Post L51 South Building. At that time, Gregory had been working as a Corrections Officer for approximately six months. Ison had been a Corrections Officer at the Justice Center for approximately nine years, and L51 was his normally assigned post.

9. There are two Corrections Officers normally assigned to third shift at Post L51. One officer is assigned to work "in the books", meaning that the officer is stationed in the Local Control Room as the Local Control Officer. The other officer is the Housing Officer and is responsible for making the scheduled rounds.

10. On the night of September 27, 2000, the inmates were locked in their cells and counted at approximately 11:10 p.m. Lights out occurred immediately following the count.

11. As with most evenings after lights out, numerous calls and requests came into the Local Control Room by inmates using their intercoms from inside their cells.

12. On the evening of September 27, 2000, Assamad had entered the cell, slammed the door, and woke plaintiff. Plaintiff went back to sleep, and Assamad eventually woke him complaining about his snoring. Plaintiff felt threatened.

13. Shortly after 11:00 p.m., a series of intercom calls came in from Cell 25 and Cell 23, an adjacent cell. The first call was from Cell 25. Plaintiff had pressed the intercom button in Cell 25 to ask for a corrections officer to come to the cell. (Pl. Depo., p. 83). Plaintiff did not stay on the intercom for a response. He immediately let go of the call button and began to return to his bed when Assamad punched him. The single punch broke his jaw and knocked him out. The punch occurred within seconds after plaintiff had pressed the call button. (Pl. Depo., pp. 83-85).

14. Plaintiff attempted only one call on the intercom. Plaintiff agrees that the momentary time sequence between his intercom call and the time he was punched and knocked out would not have given a corrections officer enough time to get to the cell to stop what had happened. (Pl. Depo., pp. 85, 87-88).

15. Defendant Gregory answered all of the calls that came in but one. Gregory was able to make out an intelligible statement from one of the calls, i.e., "I'm going to beat his ass." The parties dispute whether Gregory was able to discern any other intelligent statements from among the calls.

16. Defendant Gregory could not leave his post at the control room.

17. Defendant Ison picked up one call from Cell 25. The parties dispute whether Ison heard anything on the call.

18. Within 15-20 minutes of the last call, Officer Ison made his normally scheduled round. As part of this round, Ison walked by and looked into each cell on the post, including plaintiff's cell. Nothing unusual was seen by Ison or reported by anyone.

19. Following completion of this round, Ison reported to Gregory, "all rounds clear," indicating to defendant Gregory that all rounds were completed. Ison completed his remaining scheduled rounds every half-hour for the remainder of the shift, each time reporting to defendant Gregory that no unusual occurrences existed. Ison made a total of 11 or 12 rounds.

20. Later in the morning, at approximately 4:40 a.m., Gregory began announcing a series of wake-up calls. Consistent with the normal routine at this time of the morning, Officer Ison required each inmate to exit his cell.

21. Neither Ison nor Gregory discovered plaintiff in his cell in his injured state. Neither defendant saw any injuries to plaintiff. Neither defendant had any injuries reported to him prior to the end of his shift.

22. Gregory and Ison were relieved by first shift personnel who discovered plaintiff's injuries.

23. Plaintiff had no reason to believe Ison bore him any malice or ill will.

24. An investigation into an allegation of neglect of duty by Gregory and Ison was conducted by the Internal Affairs Unit and a report was made to Hamilton County Sheriff Simon Leis. The report concludes that both Gregory and Ison "were negligent in their duty and responsibilities as a Corrections Officer" and that the actions of both were in violation of the rules and regulations of the Sheriff's Department.

### III. Summary Judgment Standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." **Anderson v. Liberty Lobby**, 477 U.S. 242, 248 (1986) (quoting **First Nat'l Bank of Arizona v. Cities Serv. Co.**, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. **Anderson**, 477 U.S. at 255 (citing **Adickes v. S.H. Kress & Co.**, 398 U.S. 144, 158 (1970)).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. **Anderson**, 477 U.S. at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. **Id.** at 249 (citing **Cities Serv.**, 391 U.S. at 288-289). If the evidence is merely colorable, **Dombrowski v. Eastland,** 387 U.S. 82, 84 (1967), or is not significantly probative, **Cities Serv.**, 391 U.S. at 290, judgment may be granted. **Anderson**, 477 U.S. at 249.

### IV. Applicable law

### A. The Eighth Amendment

The Eighth Amendment prohibits the infliction of cruel and unusual punishments. It is well settled that the conditions under which a prison inmate is confined and the treatment he receives while incarcerated are subject to Eighth Amendment scrutiny. **Helling v. McKinney**, 509 U.S. 25 (1993). Once the state incarcerates a person against his will and restrains his liberty so that he is unable to care for himself, the Eighth Amendment imposes on

the state and its agents a corresponding responsibility for the inmate's safety and well-being. *Id.* at 32. To establish a conditions of confinement claim under the Eighth Amendment, a plaintiff must show that (1) the deprivation alleged is objectively "sufficiently serious" and (2) the prison official had a sufficiently culpable state of mind. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

To state an Eighth Amendment claim against prison officials based on their failure to protect him from attack by other inmates, plaintiff must allege facts showing that defendants' conduct amounted to "deliberate indifference" to an excessive risk to inmate health or safety. *Id.* See also *Gibson v. Foltz,* 963 F.2d 851, 853 (6th Cir. 1992). A prison official may be held liable for his failure to protect inmates from attacks by other inmates only if he knows that an inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Prison officials must exhibit more than lack of due care for a prisoner's safety before an Eighth Amendment violation will be found. *Id*. at 835; *Gibson,* 963 F.2d at 853. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. It is not enough that the official "should" have perceived a significant risk, but did not. *Id.* at 838. Moreover, liability will not be found where a prison official actually knew of a substantial risk of harm to an inmate if he responded reasonably to the risk, even if the harm ultimately was not averted. *Farmer,* 511 U.S. at 844.

Under the two-part *Farmer* test, the claimant need not show that an official acted or failed to act believing that harm would actually befall the inmate. It is enough that the official

acted or failed to act despite his knowledge of a substantial risk of serious harm. *Id*. at 842.

"Proving that defendant had a sufficiently culpable mental state to make him or her liable for deliberate indifference is a burden borne by the plaintiff." **Tate v. Coffee County, Tennessee,** 48 Fed.Appx. 176, 179 (6th Cir. 2002)(not selected for publication in the Federal Reporter) (citing **Comstock v. McCrary,** 273 F.3d 693, 703 (6th Cir. 2001)). "This burden can be met 'in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Id.* (citing **Farmer,** 511 U.S. at 842).

In order to state a claim for relief under the Eighth Amendment based on a denial of medical care, a prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." **Estelle v. Gamble**, 429 U.S. 97, 106 (1976). Deliberate indifference may occur when a prison guard intentionally delays access to medical care. *Id.* at 104-105. A prisoner who suffers pain and mental anguish from a delay in receiving medical care may state a claim under the Eighth Amendment. **Boretti v. Wiscomb**, 930 F.2d 1150 (6th Cir. 1991). Plaintiff must allege that prison officials have denied his reasonable requests for medical care when such need is obvious, and when he is susceptible to undue suffering or threat of tangible residual injury. *Id.;* **Westlake v. Lucas**, 537 F.2d 857, 860 (6th Cir. 1976); see also **Estelle**, 429 U.S. at 106. A prison official may be held liable under the Eighth Amendment for denying proper medical care only if "he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures

to abate it." *Farmer*, 511 U.S. at 847.

### B. Qualified immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). That is, "in the light of pre-existing law the unlawfulness must be apparent." *Id.* The burden is on the plaintiff to allege and prove that the defendant violated a clearly established right. See *Tucker v. Callahan,* 867 F.2d 909, 913 n. 3 (6th Cir. 1989). In determining whether a constitutional right is clearly established, this Court must look first to decisions of the Supreme Court, then to decisions of the Sixth Circuit, and finally to decisions of other circuits. *Cagle v. Gilley,* 957 F.2d 1347, 1348 (6th Cir. 1992). Decisions of other courts can clearly establish the law only if the decisions "both point unmistakably to the unconstitutionality of the conduct and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional." *Id.*

The plaintiff will defeat a qualified immunity defense if he can produce sufficient evidence after discovery to prove the existence of genuine issues of material fact regarding the immunity defense, or if the undisputed facts show that defendant violated the plaintiff's clearly established rights. *Noble v. Schmitt,* 87 F.3d 157, 161 (6th Cir. 1996)(citing *Mitchell v.*

*Forsyth,* 472 U.S. 511, 526 (1985)).

The Sixth Circuit has set forth a three-part procedure for evaluating claims of qualified immunity: "First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir.1999)(citing *Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir. 1996)); see also *Flint ex rel. Flint v. Kentucky Dept. of Corrections*, 270 F.3d 340, 350 (2001).

## V. Opinion

### A. Failure to protect

The harm that plaintiff suffered as a result of the assault by his cell mate, a broken jaw and a head injury, is sufficiently serious to support his Eighth Amendment claim. The issue is whether plaintiff has come forward with sufficient evidence to show that defendants demonstrated deliberate indifference to a substantial risk of serious harm to plaintiff. In resolving this issue, the Court need not determine the admissibility of the statements by Gregory and Ison contained in the Interdepartmental Correspondence on which plaintiff relies in support of his claims. Assuming the statements are admissible, those statements and the conclusion reached by the investigator that defendants were negligent, considered together with the other evidence of record, are insufficient to show the existence of genuine issues of

fact concerning whether defendants violated plaintiff's Eighth Amendment rights by being deliberately indifferent to a substantial risk of serious harm to plaintiff.

The evidence shows that several intercom calls came into the control room from Cells 23 and 25 shortly after 11:00 p.m. on the evening of September 27, 2000. Plaintiff testified at his deposition that his cell mate was threatening to hit him, whereupon plaintiff pushed the call button and said, "Get a CO up here immediately." (Plaintiff's deposition, pp. 82-83). Gregory testified at his deposition that he only heard white noise and constant yelling when he answered the first call, and he could tell an inmate was "definitely up on the intercom yelling to the point where it, it almost cancelled itself out, even though you could still hear just constant yelling . . ." (Gregory depo., p. 12). Gregory could not tell if one or two voices were yelling, but he could discern that the yelling was "irate". (Gregory depo., p. 13). Gregory asked the caller what he needed but could not understand the response. (Gregory depo., p. 14). Gregory answered the second call, which was very loud white noise, which Gregory explained occurs if someone yells into the intercom. (Gregory depo., p. 32). There were two more phone calls from Cells 23 and 25, one of which Gregory answered. (Gregory depo., pp. 32-33). During one of the calls, Gregory heard someone report, "I'm going to beat his ass." (Gregory depo., p. 14). Gregory made Ison aware of the situation, informing him that he had received a couple of calls with inmates yelling at each other and that two cells called in at the same time yelling at Gregory. (Gregory depo., p. 15). Gregory asked Ison what he should do. (Gregory depo., pp. 15-16). Ison picked up the next call after that. (Gregory depo., p. 16). Gregory testified that as housing officer, it was Ison's responsibility to respond to an altercation.

(Gregory depo., p. 38).

Ison testified at his deposition that he was in the bathroom when the first two calls came in but that Gregory subsequently told him two calls had come in and Gregory could not understand what was said. (Ison depo., p. 19). Another call came in, and Gregory reported to Ison that the inmates must be yelling at each other. (Ison depo., pp. 22-23). Gregory told Ison that no one had answered him when he attempted to talk to the inmate, so he hung up. (Ison depo., p. 26). Ison testified that a short time later, he answered a call from Cell 25 but received no response when he asked the caller what he could do for him. (Ison depo., p. 26). Ison testified that he did not hear Gregory say that an inmate had said over the intercom, "I'm going to beat his ass", but if Ison had heard that statement he would have called it in via the intercom or gone into the pod to see what the problem was. (Ison depo., p. 36). Ison also testified that when he performed his rounds, he saw plaintiff's head on the pillow but did not see any blood or any other problem with his face. (Ison depo., pp. 33-34).

Drawing all inferences in favor of plaintiff, the Court finds that the evidence is not sufficient to support a finding that either Gregory or Ison was deliberately indifferent to a substantial risk of serious harm to plaintiff posed by another inmate. The evidence does not support a finding that either defendant actually drew the inference that a substantial risk of serious harm existed based on the intercom calls by the inmates. The evidence likewise does not support a finding that Gregory and Ison failed to take reasonable measures to abate a substantial risk of serious harm to plaintiff. First, there is no evidence that either Gregory or Ison had notice of a conflict situation prior to the incident. Second, there is no evidence that

either Gregory or Ison could have prevented the injury to plaintiff. Gregory was not able to leave his post, and it is undisputed that neither Ison nor any other officer would have been able to stop the first punch by Assamad even if they had promptly investigated the situation upon receiving the intercom call placed by plaintiff. Accordingly, because the evidence does not support a finding that defendants violated plaintiff's Eighth Amendment rights by demonstrating deliberate indifference to a substantial risk of serious harm posed by another inmate, defendants are entitled to summary judgment on this claim.

### B. Deliberate indifference to medical needs

Defendants are entitled to summary judgment on plaintiff's claim that they were deliberately indifferent to his medical needs. The evidence does not support a finding that defendants knew plaintiff was in obvious need of medical care. There is no evidence that defendants received a report of an actual injury or any other unusual activity following the intercom calls. There is also no evidence to indicate that defendants observed plaintiff's injuries or anything out of the ordinary as plaintiff lay unconscious in his cell following the attack. As there is no evidence of a constitutional violation based on deliberate indifference to plaintiff's medical needs, defendants are entitled to summary judgment on this claim.

### VI. Conclusion

In accordance with the foregoing, defendants' motions for summary judgment (docs. 32, 36) are **GRANTED.** This case is **DISMISSED** and is **TERMINATED** on the docket of the Court at plaintiff's cost.

**IT IS SO ORDERED.**

                    S/ Herman J. Weber
                    HERMAN J. WEBER
SENIOR JUDGE, UNITED STATES DISTRICT COURT

J:\HJWA\02-143msj8tha.wpd